Good morning, Counsel. Good morning, Your Honors. My name is Carol Lamereau. I am Counsel for Mr. Jose. I'm going to attempt to preserve about seven minutes, but I'll watch my time. So this case presents a number of different substantive issues. So given time limitations, I intend to spend most of my time discussing the assault issues and will also attempt to address briefly the Rule 608 issue as well as the government's cross-appeal issue. The assault issues, we raised three different assault claims, and though they are distinct, they're interrelated to an extent because they all depend on the elements of the charge defense here, which is 113A3 assault, which is assault with a dangerous weapon and intent to do bodily harm, as well as the elements of the underlying offense of assault. So the first claim is that the district court erred in refusing to provide a jury instruction about the lesser-included offense of assault. And I believe it's undisputed by the parties that the first element of that test is met, that simple assault is a lesser-included offense of an A3 assault. And we also, our position here is that it was also factually available because the jury in this case could have convicted Mr. Jose of the, of a simple assault rather than an A3 assault if it found that he intentionally shot towards the victim, but in doing so did not intend bodily harm. And so this was a... I mean, this may get into one of your other issues. Depends on what the theory of assault is because an assault can be either a willful intent to inflict injury on another or by threat to create reasonable apprehension of immediate bodily harm. And there wasn't a factual basis for that one because she said she didn't have the apprehension. So the theory of simple assault is willful attempt to inflict injury. Here, the factually the attempt to inflict the injury is with a firearm. How do you possibly willfully attempt to inflict injury with a firearm? Injury meaning bodily contact with a firearm without assaulting with a firearm. It just doesn't seem that you could convict of the lesser without necessarily having found the greater. Well, and, Your Honor, this really depends on how this Court looks at that willful element. And there's case law which we cited, I believe Llewellyn is the main case, that that case involved an offensive contact case, but it was assessed under the attempted battery prong. It said that this would qualify under an attempted battery because in looking at whether a defendant made a willful attempt, you're looking to whether there was a willful intent to do the act that amounted, that amounts to unlawful conduct. Here, because it's clear and undisputed that Mr. Jose intentionally shot towards her, that that fulfills that part of the element. And that it doesn't need to, so that the willful refers to the act rather than the intended result. And Llewellyn supports that. And then also the very few cases that have looked at assault, an attempted battery assault that doesn't involve actual conduct, have come out with, or have, are consistent with our position as well. So the problem here is that there are very few, even though there are two different forms of assault, there, of common law assault, there are very few cases that are assessed under the willful attempt clause that do not involve conduct. Most of them are actually battery cases. However, I think to the extent, especially like Llewellyn specifically looked at that offense under the attempted battery prong, and so that reasoning applies with equal force. And those cases are clear that willful refers to the volitional act rather than the intended result. And again, that an intentional intent to injure, specific intent to injure, is not required. And that is something that does separate, in this case, a simple assault from an A3 assault. Right. A willful attempt to injure is not required if you are, the theory of the assault is that you created, you attempted to scare them, create a reasonable apprehension of fear. But there wasn't a factual basis for that because she said she didn't have the reasonable apprehension. Well, that kind of does get into my second issue, which does depend on, for instance, the model instruction in the Ninth Circuit does encompass, does seem to suggest that you either have to have a contact assault, or if you have a non-contact contact assault, that you need to have a display of force that causes a reasonable apprehension of bodily harm. And so there is a question to an extent as to whether you can have a non-contact, a non-contact battery under the first prong of a common law assault, whether or not that requires an apprehension of harm. And again, this is the problem, we get to this problem here because so many of the cases, there's very few cases that deal with these factual circumstances, where you have really a threat. It's a threat to commit an assault, but then there's no reasonable apprehension. And so, but the cases, the limited cases that have dealt with similar scenarios do support our position. That includes, it's Dat-Kwok-Dew, I believe is how it's pronounced. Also Acosta-Sierra, which was a 111B case, so there is a little. But this would water down assault. I mean, the way the alternatives are laid out, that it's willful attempt to inflict injury on another, or it can be threat to inflict injury that creates reasonable apprehension. If there's no reasonable apprehension and no actual attempt to inflict injury, then there's no assault. Maybe it's some other crime, some sort of criminal threats, but it's not an assault. And you're trying to sort of mix and match between the two to create a lesser nonexistent kind of assault and then say that was the lesser that they could have found. But that's not the options the common law definition of assault gives us. I disagree, Your Honor, to that extent that there is case law here that does support our interpretation, that you can commit a you can commit an attempted battery without requiring a specific intent to injure. So that's so. Sotomayor, by creating reasonable apprehension. Well, I think that also falls under the other prong. The reasonable apprehension prong, what distinguishes that from the attempted battery is that you don't need to have even, you can have an accidental under the circumstances, because the definition that this circuit has adopted, which is that assault is either a willful attempt to inflict injury or a threat to inflict injury when coupled with apparent presentability causes reasonable apprehension. That second form doesn't require even an intent to scare. I think you could even have something where if you do something that reasonably causes harm.  But an element of that alternative is causes a reasonable apprehension. That was not, there was, the evidence does not support that theory in this case, which is why the Court dropped it out. That, that. And once you drop it out, what remains is not a lesser that could be found separately from the greater. Well, I think that, again, depends on whether or not, whether or not you can willful it all comes down to defining willful and what willful modifies in this case. And again, Llewellyn supports this. I also think that Acosta-Sierra does. And in the Due case, which was a case out of Oregon, involved a defendant who had fired six separate shots at a vehicle while he was tailgating during a tailgating incident. And in looking at the elements of simple assault and also A3 assault, the Court said that, and there was no evidence in that case that, of apprehension. I believe I looked at the facts of that case as well, that I believe several of the victims did not even see the first shots. And there was no claim by the government or either party that there was any apprehension. And yet the Court still said that that would be sufficient to be a simple assault. And then if he possessed a specific intent to do bodily harm, that then it could become an A3 assault. And so I think that there is support in the case law. Again, look at the cases that we cite in the brief for our position. And also, in looking at the Court's ruling here, I do think it's clear that in denying the lesser included instruction, the district court was under the mistaken impression that the only element that differentiated simple assault and A3 assault was the use of a dangerous weapon. It cited several of the 111 cases, which is assault on a federal officer. That has different elements of the offense, and I think that impacted the Court's position as well. And the lack of instruction in this case was extremely prejudicial because our position is that the court, or excuse me, that the jury could have found him guilty of the simple assault if it found that he intentionally fired towards her, but then did not intend her bodily harm. His intent was a central issue in this case. Really as to all charges, but it was what he intended when he fired those shots. And without the lesser included instruction, the jury was left with this sort of all or nothing determination where they could either convict him of the greater offense or walk him on that count. And I think it's also clear in the record that the jury was really struggling with whether that intent component had been met in this case because they submitted a question that said, if you point a weapon toward someone, or toward not at someone and fire shots, is that automatically considered intent to do bodily harm? So it's clear here that the jury was struggling with this issue, and then also they found him guilty of voluntary manslaughter based on a reckless theory, which also suggests that they accepted that he intentionally fired towards her but did not intend her bodily harm. As to the next claim, this claim is that the district court gave an erroneous instruction as to the aggravated assault definition. And in fairness, this really comes up because the issues come up here because the model instruction in this case provides a definition that's different than the definition that's in the case law. And so the model instruction requires either a battery or an intentional display of force that reasonably caused the victim to fear immediate bodily harm. And so Mr. Jose argued that they should, that that definition encompassed the facts here because there was an intentional display of force, whether you viewed that under an, or it was a non-contact intentional display of force. And also the Eighth Circuit has a similar assault instruction that provides a similar definition, which also suggests the potential that a non-contact, a non-contact assault may require a reasonable apprehension of bodily harm regardless of whether it's a willful attempt or a, or an, excuse me, a threatened battery. And so I think here that the, that even assuming that the court's instruction adequately defined the willful, excuse me, the attempted battery form of assault, that it also should have provided instructions as to both forms of assault because it encompassed Mr. Jose's theory of the defense. And I think it would have made it easier for him to argue to the jury that he did not intend to shoot her and then to show the different forms of, different elements that are required under the different forms of assault because these, these issues can become really confusing. Let's see. Next, as to the Rule 608 issue, the district court also erred in precluding Mr. Jose from asking the victim about her pending fraud charges, which would have impeached her character for honesty. In 2009, she was charged with, in state court, with fraudulent schemes and practices and several counts of false statement. Mr. Jose attempted to use these at trial, but the district court denied that motion because it did not believe there was any legal authority for it since it was not an actual conviction. But Rule 608B makes clear that the defendant or parties are able to impeach by non-conviction actions and that really, the court almost had it in the reverse, so that Rule 609 applies when it involves prior convictions. But otherwise, 608B was applicable here. And I think that given the importance of her testimony in this case as to Mr. Jose's intent, which again was critical for the assault issue as well as the level of homicide applicable, that this was prejudicial in this case. Did you raise 608 in the district court? It was, so he did in the motion that was filed, the defense attorney did not specifically cite Rule 608. However, it was decided, the court decided on Rule 608 grounds. The government raised the Rule 608 application and their response, and the parties discussed it at the hearing. And in denying the motion, the court specifically said, I don't think this comes in under Rule 608, so it is preserved. But again, her credibility was central to the case, in particular as to his intent. And so even though he was able to impeach her in some respects, because there were issues with her ability to proceed due to intoxication, there was really no other evidence that suggested a propensity for dishonesty. And this was something that would have also shown that despite her potential perception issues, that she also could have a character for untruthfulness, and it should have been allowed to be discussed. And I'm going to reserve the rest of my time. All right, thank you, counsel. We'll hear from the government. Good morning, your honors, and may it please the court, Josh Handel for the United States. Gilbert Jose admitted to firing his gun multiple times toward the two victims in this case, Billy Johnson and IO. Now the first three issues on appeal concern his conviction for assaulting IO with a dangerous weapon. And I agree with my friend that these are interrelated issues. I'm happy to go through them in turn. But the bottom line is that the district court was correct about the elements of attempted battery assault. And that determination forecloses all of Mr. Jose's challenges to this particular conviction. Well, but her argument is that if you actually parse it out, there's a difference in the mens rea. Even on the willful attempt to injure theory of simple assault, there's a difference between the mens rea for that simple assault and the greater offense. And that would allow the jury to split between the two and why the lesser should have been given here. What's your response to that argument? So, Judge Collins, we don't see any daylight between the specific intent required of attempted battery assault, which is attempts to inflict injury upon the person of another, and the statutory intent element under the assault with a dangerous weapon offense, which is intent to do bodily harm. But haven't we said, I think in Llewellyn, that the simple assault, even though it says willful attempt to inflict injury, does not require an intent to inflict injury? So, Your Honor, Llewellyn was dealing with a completed battery. And I think we need to look at what the species of assault were at common law. Our position is that there were actually three. There is, number one, a completed threat, number two, a completed battery, and number three, an attempted battery. And here, we know this was not a completed battery because unlike Mr. Johnson, IO was not actually shot or injured. We know this was not a completed threat because IO testified that she was not put in reasonable apprehension. She didn't even realize that Mr. Jose was firing bullets at the time. So the evidence was only consistent with an attempted battery theory of assault. And, you know, I think there has been, I will admit, there's some fuzzy language, with all due respect. There's some fuzzy language in some of this Court's precedents dealing with generally with completed batteries and talking about them in terms of attempted battery. But our view is that an attempted battery assault is first and foremost an attempt. And an attempt at common law was always a specific intent offense. An attempt requires that you have the specific intent to bring about the result that is the object of the attempt. Here, that is an attempt to inflict injury upon the person of another. And then willfulness operates as a second — Do you agree, then, that a simple assault on the willful intent to inflict injury theory is a specific intent offense, not a general intent offense? Yes, Your Honor, that's correct. And just to kind of — I don't know if this will be helpful or not, but the analogy that I've been thinking about in terms of how willfulness interacts with the specific intent is that, you know, if my friend and I go to the boxing ring and we decide to spar for an hour, he very well might have the specific intent to inflict injury upon my person. He might be trying to knock me out. He is certainly trying to hit me in the head, right? These are all the specific intent required under this statute. But that's not willful, because we are agreeing to do this together. It's legitimate, it's consensual, and it's lawful, right? And the — so those are two separate mens reas that were both instructed to the jury. And the jury had to find that Mr. Jose had the specific intent to inflict injury upon the person of Ayo, and also that his conduct was willful, meaning that he did it with a consciousness of culpability. He knew that it was against the law. And there's no inconsistency there. And I think that that is the best reading of attempted battery assault. It's consistent with the common law's view of attempted battery assault itself. And it's also consistent with the background principle that attempt is always a specific intent offense, right? And I don't think there's anything unusual about that. I mean, we typically — I mean, the completed battery is a battery and can be charged as a battery. But under your theory that an assault, which is an attempted battery, is a specific intent offense, the accidental shooting is not an assault, but it may be a battery. I think that's — well, I think that's right with a couple of caveats. So the first caveat is that we believe that a completed battery is a type of assault at common law. It would not be an attempted battery assault, which was the theory that was put forward in this case and consistent with the trial evidence. I also don't think there's anything unusual about that, right? We generally charge defendants with responsibility for the real-world consequences that materialize from their volitional acts. But we require a heightened mens rea when something has not actually materialized in harm, but we are still proceeding on an inquit offense theory-like attempt. So there's nothing unusual about that. It's consistent with the common law. It's consistent with criminal law and with what this Court said in Acosta Sierra, differentiating between the different types of assault. I did just want to respond to a couple of points that were made in the opening argument. So first, with respect to Model Instruction 8.5, we do view that as under-inclusive of the types of assault that are recognized at common law. We think that the Model Instruction correctly encompasses two forms of common law assault, the completed threat and completed battery, but does not provide the requisite elements for attempted battery. And I would just point out that in the introduction to the Model Instructions, this Court made clear they are not mandatory, they have not been adopted or approved by the Ninth Circuit, and they need to be carefully reviewed with additional legal research and analysis performed when needed before being used in any specific case. And then there is an explicit proviso right in the intro to the Model Instructions saying the Ninth Circuit does not adopt these instructions as definitive. Indeed, occasionally the correctness of a given instruction may be the subject of a Ninth Circuit opinion. So we believe that that instruction is under-inclusive as to attempted battery assault, which was the theory of the case that was consistent with the trial evidence and the only one that was appropriate for the district court to instruct the jury on. I don't understand Mr. Jose to have made kind of a generalized challenge to the sufficiency of the evidence underlying this count, aside from his view that assault always requires the victim to be put in reasonable apprehension. To the extent that Your Honors read his challenge more broadly, I just want to point out a couple of pieces of evidence that we put before the jury. So Mr. Jose admitted to pulling out his pistol, loading it, and shooting toward I.O. at close range for no reason that he could explain. As you said in Acosta Sierra, it is permissible for a factfinder to infer that a person intends the natural and probable consequences of acts done knowingly. I think layered on top of that is the fact that Mr. Jose told three or four different inconsistent stories over the course of his interviews with law enforcement. After the fact, you know, he's brought in, and his first — his first statement to law enforcement is, I don't own a gun, I wasn't there, I didn't shoot at anybody. His second statement was, okay, I own a gun, I was there, I shot bullets, but it wasn't in the direction of anyone. His third statement is, yes, I was there, and I shot toward them, but I wasn't trying to specifically injure or kill either of them. And only after that does he come back with this idea that he was put in fear because they were approaching him and yelling and this kind of self-defense notion. So I think given the inconsistency in his statements to law enforcement, on top of, you know, this axiomatic phrase that we have from Acosta Sierra that jurors are able to infer intent from actions, there was ample evidence from which the jury could have and did convict on this count. Unless there are further questions about assault, I will briefly touch on the impeachment issue. So as a threshold matter, this issue is appropriately reviewed for plain error. As I believe Your Honor pointed out, Mr. Jose's motion never mentioned Rule 608. It was instead — And the district court in the ruling discussed it. And if it makes it into the ruling, then it's preserved. Well, you know, that could be the case, and I'm not going to put up a huge fight on this, but I would point out that, yes, the government did discuss Rule 608 in their response. And then Mr. Jose, again, did not discuss Rule 608 or advance any contention under it in his reply, and that's at pages 211 to 214 of the record excerpts. So I think we have, like, almost a voluntary relinquishment of the Rule 608 claim.  But it made it into the order. Sure. I mean, again, like, I'm not going to, you know, live or die on the forfeiture question. Under any standard of review, the district court appropriately excluded admission of the pending charges against IO. Arrest warrants and bear charges, without more, are not criminal convictions for purposes of Rule 609, and they are not even specific instances of conduct for purposes of Rule 608. And those charges are all that Mr. Jose asked the Court to admit. He never identified for the district court or for the government what the acts underlying those charges were. So I think that, you know, this is – it's maybe a little bit of a difficult question whether this falls more under the 608 or 609 rubric, because these are just charges. They are just judicial instruments. They are not instances of conduct, but they are also not convictions. The district court was well within its discretion to – to deny admissibility on that ground. I would point out that the record also reveals other reasons that independently counseled against going down this path. So as the government pointed out, any questioning as to the conduct underlying IO's pending criminal charges would have implicated her Fifth Amendment rights, which would have required, among other things, appointing counsel and determining whether she was willing to waive those rights in order to testify. If she would not waive her protection or if she had gotten up on the stand and denied culpability for these pending charges, as it was reasonable to assume she would have since she had not pleaded guilty or otherwise been convicted of them, Mr. Jose would have been prohibited by Rule 608b from adducing extrinsic evidence to prove her guilt. So I think it was well within the district court's discretion to decide that in these circumstances, Mr. Jose would not be permitted to go on a fishing expedition based on arrest warrants alone. I would like to just very briefly discuss the government's counterclaim. So there's no dispute that the offense of which Mr. Jose was convicted in Count I, voluntary manslaughter, is a crime of violence under this Court's decisions in Begay and Draper. And there's no dispute that as a general matter, precedential holdings of this Court, like those in Begay and Draper, apply to cases pending on direct appeal. That's what you said in United States v. Doar, which we cite in our brief. The only question controverted between the parties here is whether applying those holdings in this case would violate the Bowie test. And the Bowie test requires Mr. Jose to make two showings. First, he has to show that his conduct was innocent at the time it was committed. And second, he has to show that the judicial reinterpretation rendering his conduct criminal was so unforeseen or unexpected as to violate his due process rights. He cannot make either of those showings. He fills both prongs of the Bowie test here. Number one, Mr. Jose's conduct was not innocent. So unlike the lunch counter sit-ins that South Carolina was attempting to retroactively punish in Bowie, committing voluntary manslaughter by shooting someone to death with extreme disregard for human conduct. And even if we were just to, you know, kind of limit our aperture to the technical legal question of legal innocence under Section 924C, Mr. Jose's conduct was still not innocent. At the time Mr. Jose shot and killed Billy Johnson in 2018, voluntary manslaughter was a crime of violence under Section 924C's residual clause, which would not be judicially invalidated until a year later in United or legal innocence at the time that he committed this manslaughter. Second, deeming voluntary manslaughter a crime of violence was not a radical and unforeseen departure from former law, as this Court said in its Webster decision interpreting and applying the Bowie test. As I just noted, this was already a crime of violence at the time of the shooting under the residual clause of 924C. And even aside from the residual clause, this Court had not yet held in 2018 that recklessness offenses fell outside of 924C's elements clause. So at the end of the day, voluntary manslaughter was a crime of violence when Mr. Jose committed it. It is a crime of violence today. He cannot escape punishment under Section 924C because there was a brief interim period between his commission of the offense and his direct appeal when circuit case law held otherwise. I'm happy to take any other questions that you have about these issues or any others. If there are no further questions, I'll rest on our briefs and respectfully request that you affirm Mr. Jose's convictions on Counts 1, 2, and 4, that you reinstate his conviction on Count 3, that you vacate the sentencing package that the district court adopted, and remand for resentencing as to all counts. Sotomayor, let me just ask you, on the remand, don't we normally just remand for the court to conform the oral pronouncement with the written verdict, with the written judgment? So, Your Honor, the written judgment here, the district court had already set aside the conviction on Count 3 and did not enter a sentence on that count. So I think that it's necessary for this Court to vacate the entire sentencing package. Yeah. And send it back. Only if we reinstate that, correct? Correct, yes. If you agree to pass a reinstatement. If we don't reinstate that, don't we normally just send the case back for the district court to conform the written judgment to the oral pronouncement on the conditions? So, Your Honor, again, I think that — Just answer my question first and then tell me what you think about it. But isn't that what we normally do? I think that's correct when there's a discrepancy between the oral judgment and the written judgment. But I don't think that's the case here. Both the oral judgment that the district court entered at sentencing and the written judgment that followed on the docket do not have a conviction or sentence entered for Count 3. If this Court disagrees with our cross-appeal and does not — does not reinstate the conviction on Count 3, then I think the appropriate disposition is to affirm across the board. All right. Thank you. Thank you. Any other questions? It appears not. All right. Thank you, counsel. Okay. Just real quick as to the 924C claim, as the government notes, I don't think we really have a way around the applicability of Draper here. I just wanted to point out a couple of things. One is that I think that the innocence referred to in Bui isn't necessarily a factual innocence. It's a legal innocence of the applicable crime. And that's true in this case, that at the time Draper was decided, he was legally innocent of 924C until that new interpretation. I also do agree that if this Court does — And how was he innocent at that time in 2018? Well, because our — my understanding of the case law was that you had to have, in that it had to involve intentional or knowing conduct in this circuit that reckless conduct was not — But your opposing counsel said that in 2018 the residual clause had not yet been invalidated. That didn't come until later. I — my understanding of looking at this is just in the circuit that because voluntary manslaughter in Quijada Aguilar had been found to be not a crime of violence, also involuntary manslaughter not a crime of violence in Benali, that that was the state of the law in this circuit at the time. That's my understanding of the law. Also, I do agree with the government that if this case does go back on this issue, that it should be for a full resentencing. I had this case confused with a different case where there was a discrepancy between the oral pronouncement and the written judgment. That's not this case. No, not this. But I asked — I wanted to ask you about Draper. What's your view on how Draper affects this case? I think that Draper affects this case to the extent that — I think that — I can't get around the ruling about Draper's applicability. It's a voluntary manslaughter case. So our position is just that it shouldn't apply in this case and that we think that —  I think that Booey's satisfied here. I think that the — in this circuit, it was established that at the time of the offense, it was well established that you needed to have an intentional or knowing act. We didn't have that here. And so I think that he should get the benefit of that for — So, Counsel, you would agree that Draper applies. You're not saying that it shouldn't apply retroactively. That's not your argument, right? No. I'm saying that it would — normally, it would, but I think that because we're saying Booey applies in this case, in this particular instance, that's our position. Also, just briefly, one other point I wanted to make, I looked back at Acosta-Sierra, the facts of that case, I think support our claim that the willful intent refers to the act rather than the intended result. In that case, this Court looked at whether the defendant throwing a rock at a Border Patrol agent who did not perceive the rock as being thrown could be a willful attempt under the attempted battery clause. In that case, they said it could because he deliberately threw the rock at him, towards him. So instead of looking at whether he intended to cause some injury, they looked specifically at whether he deliberately threw the rock. And I think that really supports our case here. In that case, too, the Court specifically said that because he — because the officer could not — did not perceive it happening, that it couldn't come in under the apprehension prong. And unless this Court has any further questions, I'm all done. It appears not. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the Court. Our final case on the calendar for argument today is Cansinos v. Mencio v. Garland.
judges: RAWLINSON, COLLINS, Fitzwater